UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGEL A. ARROYO,<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civ. No. 2:13-cv-1617 (KM)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

Angel A. Arroyo brings this action pursuant to 42 U.S.C. § 405(g) and 5 U.S.C. § 706 to review a final decision of the Commissioner of Social Security that denied her applications for Title II disability insurance benefits ("DIB") and for Title XVI Supplemental Security Income ("SSI") under the provisions of 42 U.S.C. §§ 423 and 1382. Compl. (Docket No. 1, "Compl."). These applications of October 8, 2010 (DBI) and February 25, 2011 (SSI) alleged that Arroyo was disabled beginning July 12, 2010, because of "[s]evere lumbar disc disease and residuals from lumbar fusion and laminectomy and depression." Docket No. 1 ("Compl.") ¶ 5.

For the reasons set forth below, the Commissioner's decision is affirmed.

**I. BACKGROUND**

Plaintiff, Angel A. Arroyo, filed his Complaint in this Court on March 15, 2013. He was thirty-nine years of age at the time of filing. He has received a limited education and has prior work experience as a warehouse laborer, shipping and receiving clerk, and sprinkler installer. He alleges that he has been disabled since July 12, 2010, because of medical impairments, which he describes as "[s]evere lumbar disc disease and residuals from lumbar fusion and laminectomy and depression." Compl. ¶¶ 6, 7.

Following a workplace injury, Arroyo had minimally invasive back surgery in August 2005. He continued to have lower back pain and, as a result, in July 2010 he had a second, more invasive surgery that included a spinal

1

fusion. A week after that surgery, he was diagnosed with a hematoma, which was drained. He has been to the emergency room several times for back pain. He alleges disability on account of persistent and debilitating pain as a result of his back problems.

The DBI claim submitted October 8, 2010 was initially denied on February 5, 2011 and on reconsideration on April 12, 2011. Record of Proceedings ("R __")[1] (Docket No. 8) at 18. On October 28, 2011 Arroyo appeared for a hearing before Administrative Law Judge ("ALJ") Dennis O'Leary and was represented by William J.L. Scherman during the hearing. R 18.

## II. DISCUSSION

Arroyo's claims for DIB and SSI were denied by ALJ O'Leary.

To qualify for Title II DIB benefits, a claimant must meet the insured status requirements of 42 U.S.C. Section 423(c). To be eligible for SSI benefits, a claimant must meet the income and resource limitations of 42 U.S.C. Section 1382. To qualify under either statute, a claimant must show that she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted (or can be expected to last) for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

On appeal to this Court, Arroyo submits that the Commissioner's decision is not supported by substantial evidence. Docket No. 12 ("Pl. Br.") at 2. Specifically, he raises two claims of error: (1) the residual functional capacity ("RFT") assessment for the full range of sedentary work was not based on substantial evidence and (2) the medical evidence justifies reversal and the award of benefits.

### A. Standard of Review

As to legal issues, this Court's review is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). As to the factual findings of the Administrative Law Judge ("ALJ"), however, this Court is directed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes v. Apfel*, 228 F.3d 259,

---

[1] The "R__" page numbers refer to those appearing in the bottom right corner of the administrative record, Docket No. 8.

262 (3d Cir. 2000). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *accord Richardson v. Perales*, 402 U.S. 389, 401 (1971).

> [I]n evaluating whether substantial evidence supports the ALJ's findings . . . leniency should be shown in establishing the claimant's disability, and . . . the Secretary's responsibility to rebut it should be strictly construed. Due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding than is applicable in a typical suit in a court of record where the adversary system prevails.

*Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003) (internal citations and quotations omitted). When there is substantial evidence to support the ALJ's factual findings, this Court must abide by them. *See Jones*, 364 F.3d at 503 (citing 42 U.S.C. § 405(g)).

After review of ALJ O'Leary's analysis, pursuant to the five-step legal framework, I find that the ALJ's opinion is supported by substantial evidence. Accordingly, I will affirm his opinion of November 10, 2011.

### B. The ALJ's Decision

After performing the sequential five-step analysis, the Administrative Law Judge Dennis O'Leary denied Arroyo's claim of benefits on November 11, 2011. The ALJ found that Arroyo could perform the full range of sedentary work and was not disabled. The Appeals Council affirmed the ALJ's denial on January 18, 2013. Arroyo now submits that ALJ O'Leary's denial was in error and that the decision is not supported by substantial evidence. The Commissioner of Social Security (the "Commissioner") maintains that ALJ O'Leary's denial of benefits is supported by substantial evidence.

**STEP 1:** Determine whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. 20 CFR §§ 404.1520(b), 416.920(b). If not, move to step two.

At Step 1 of the sequential evaluation, ALJ O'Leary found that Plaintiff had not engaged in substantial gainful activity since July 12, 2010, the alleged onset date. R 20. There is no dispute as to Step 1.

> **STEP 2:** Determine if the claimant's alleged impairment, or combination of impairments, is "severe." *Id.* §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment, move to step three.

At Step 2, ALJ O'Leary found the following severe impairments: degenerative disk disease and discogenic back pain, post lumbar fusion and laminectomy. He also noted that Arroyo alleged that he was "stressed" because of his condition, but found that there was no evidence of any psychiatric treatment or diagnosis on record.

To come to this conclusion, the ALJ thoroughly reviewed Arroyo's medical history. He noted that Arroyo injured his back in 2005 and that an MRI taken after the incident indicated mild degenerative disc disease and disc herniation and L4-L5. He underwent a lumbar discectomy in August 2005, but continued to complain of back pain after this surgery. A post-operative MRI did not show any further disc herniation, but did show degenerative disk disease. R. 20 (citing Exhibits 2F and 5F). Arroyo continued to work, on and off, during this period, though he complained of pain. He alleges that the pain worsened in 2010, causing him to stop working. A lumbar discogram taken in May 2010 that was "markedly positive for reproduction of his back pain at the L5-S1 level and negative at L3-4 and L4-5.

In July 2010 Arroyo underwent his second surgery, a laminectomy and bilateral fusion at L4-L5 and L5-S1. R. 21. During a follow-up visit with his surgeon, Arroyo reported that his pain had improved, but that he still had intermittent lower extremity pain.

The ALJ also reviewed the diagnostic medical evidence. An orthopedic consultative examiner, Dr. Justin Fernando, examined Arroyo in January 2011. After a thorough examination, Dr. Fernando diagnosed Arroyo with bilateral subjective lumbrosacral radiculopathy and concluded that Arroyo could not do any physically-demanding tasks. R. 21 (citing 11F). The ALJ also summarized the findings of Arroyo's spinal surgeon's evaluation, in which the surgeon opined that Arroyo could: sit, stand, and walk for four to six hours each day; frequently lift up to twenty pounds; perform light duty. The surgeon

noted that claimant's limitations were primarily for physical work. R. 21 (citing Exhibit 13F). The ALJ also noted that Arroyo visited the emergency room for back pain in February, June, and September 2011. R 21 (citing Exhibits 14F and 16F).

> **STEP 3:** Determine whether the impairment meets or equals the criteria of any impairment found in the Listing of Impairments. 20 CFR Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is automatically eligible to receive benefits; if not, move to step four. *Id.* §§ 404.1520(d), 416.920(d).

At step 3, ALJ O'Leary found that Arroyo did not have an impairment or combination of impairments that met or medically equaled one of the listened impairments in 20 CFR Part 404, Subpart P, Appendix 1. R 28 (citing 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). He supported this conclusion by finding that the claimant did not meet listing 1.04 (relating to spine disorders) because the record does not establish any evidence of motor, sensory, or reflex loss, spinal arachnoidities confirmed by an operative note or pathology report, or lumbar spinal stenosis. He also found that the claimant had not lost the ability to ambulate, citing the report of Dr. Justin Fernando, the orthopedic consultative examiner. R 22.

> **STEP 4:** Determine whether, despite any severe impairment, the claimant retains the Residual Functional Capacity ("RFC") to perform past relevant work. *Id.* §§ 404.1520(e)-(f), 416.920(e)-(f). If not, move to step five. Up to this point (steps 1 through 4) the claimant has borne the burden of proof.

At step 4, ALJ O'Leary ruled that Arroyo had a residual functional capacity ("RFC") to perform the full range of sedentary work. 20 CFR 404.1567(a), 416.967(a). R 22.

The ALJ's opinion cites to the testimony of Arroyo about his limitations. The ALJ noted that Arroyo testified that he could do nothing but lie down and watch television all day, could stand for only seven minutes, could sit for only ten minutes, and could walk for only 10 minutes. R 22. He testified that he could not drive, but later, upon further questioning, admitted to owning a car that he last drove approximately a week before the hearing before the ALJ. R 22. He claimed to take approximately six prescription pain pills a day, but could not adequately explain how he acquires the medication because he did

5

not have a treating physician or insurance. He said that the hospital prescribed the pain medication and muscle relaxers. R 32. Arroyo stated he received the medication upon visits to the emergency room, but the ALJ noted that the record indicated that Arroyo visited the emergency room once every few months, which would not be sufficient to acquire as much medication as he alleged to be taking.

The ALJ concluded that the objective medical evidence indicated that Arroyo was not as limited in his activities as he claimed to be. R 22. He cited to a March 2010 MRI that showed that Arroyo's condition had not worsened or changed since the post-operative MRI taken in August 2005, after Arroyo's first surgery. He hypothesized that "the claimant worked for years after the first surgery" and that it was unclear why he could not work now. He also noted that Arroyo's spinal surgeon found that he could sit, stand, and walk for four to six hours each day and could lift up to twenty pounds, "giving him a residual functional capacity of between light and sedentary work." He also that the consultative examiner's findings were similar and that both the surgeon and consultative examiner found that he "cannot do only physically demanding jobs." R 22 (citing Exhibits 11F and 13F).

After reviewing the evidence, the ALJ found that Arroyo's statements were not credible to the extent they were inconsistent with the evaluations of Dr. Fernando and Dr. Giordano, to which he gave great weight.

After assessing Arroyo's RFC, the ALJ found that it would not permit him to perform his past relevant work as a warehouseman, a shipping and receiving clerk, and a sprinkler installer, because these past jobs require an RFC for a medium range of physical exertion. R 23.

> **STEP 5:** The burden shifts to the SSA to demonstrate that the claimant, considering his or her age, education, work experience, and RFC, is capable of performing jobs that exist in significant numbers in the national economy. 20 CFR §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91–92 (3d Cir. 2007). If so, benefits will be denied; if not, they will be awarded.

At step 5, ALJ O'Leary considered Arroyo's RFC, age, education, and past work experience and concluded that Arroyo could perform a full range of sedentary work. Thus, he was "not disabled" within the framework of Medical-Vocational Guidelines, Rule 201.25. R 23.

### C.  Discussion of the ALJ's Analysis

It is the ALJ's analysis at Steps 4 and 5 that give rise to Arroyo's central contentions on appeal. Specifically, he raises two claims of error: (1) the residual functional capacity ("RFC") assessment for the full range of sedentary work was not based on substantial evidence and (2) the medical evidence justifies reversal and the award of benefits. Specifically, he argues that the ALJ's analysis of the consulting doctor and surgeon's evaluations overlooked certain information.

### 1. The RFC Assessment

#### a. Arroyo's contention concerning persistent pain, based on Dr. Fernando's report.

Arroyo cites the report of Dr. Fernando, the Social Security orthopedic consultant, that his pain is clinically apparent, unremitting and unresolved. Pl. Br. at 19. This, he says, conflicts with the ALJ's RFC finding that he is capable of full-time sedentary work. Arroyo contends that the ALJ failed to address this contradictory evidence and explain why he discounted it. The Commissioner responds that the ALJ did consider and weigh all the medical opinion evidence, including that of Dr. Fernando. R 21–22.

Dr. Fernando's Consultant Statement noted that Arroyo's problems trace back to the disc herniation at L5-S1. The minimally invasive first procedure did not "deal with the problem," nor did the second surgery. He noted that the "need for the fusion is not clear, but the claimant continues to be in a state of pain as evidenced by the spasm in the back." R 423. The clinical exam did not reveal "any significant disk herniation as can be judged from physical examination." R 423. He noted that, to the extent that his pain is in fact caused by disk herniation, the surgeries have not resolved the issue. The exam did reveal some tenderness and some spasm on both sides of the midline in and around the area of dissection, but that Arroyo did not appear to be in "acute distress." R 422. He had a normal gait, did not need help getting on or off the exam table, and did not require an assistive device.

Dr. Fernando diagnosed Arroyo with: "History of disk herniation at L5-S1, status post minimally invasive discectomy at first followed later by lumbar laminectomy and fusion . . ." and "Continued pain in the lower back with bilateral subjective lumbosacral radiculopathy." He concluded that "it is

7

conceivable given the circumstances that he may not be able to engage in physically-demanding activities at this point." R 423.

The ALJ found that this report was supported by the whole of the evidence and assigned it great weight. R 23. The ALJ did not interpret Dr. Fernando's evaluation in the same manner that Arroyo does, but I find that the ALJ's interpretation is well founded.

I do not agree with Arroyo that Dr. Fernando's evaluation is in conflict with the ALJ's RFC. The ALJ did find that Arroyo suffered from severe impairments of degenerative disk disease and diskogenic back pain post lumbar fusion and laminectomy. That is not inconsistent, but consistent with Dr. Fernando's diagnosis. Dr. Fernando's report does not dictate a finding of acute, unremitting, unresolved pain. Indeed, Dr. Fernando found that Arroyo was not in acute distress. He reached the equivocal conclusion that it was "conceivable" that Arroyo "may not be able to engage in physically-demanding activities at this point."

An RFC of sedentary work is supported, not contradicted, by Dr. Fernando's report. Remand is not appropriate on this basis.

### 2. Arroyo's contention concerning limitation to a six-hour work day, based on the report of Dr. Giordano.

Arroyo submits that the ALJ's conclusion regarding Arroyo's RFC conflicts with the notation of his surgeon, Dr. Giordano, that "I do not think he will be able to work a[n] 8hr workday. Probably limited to 6 hours/day." R 428. He also contends that the ALJ erred in failing to address this contradictory evidence and state why he discounted it.

The Commissioner urges that the notation must be considered in the context of the report in which it appears. The Physical Capacity Form noted that "Patient's limitations are primarily for physical work. I do not think he will be able to work a[n] 8hr workday. Probably limited to 6 hours/day." R 428. That same capacity evaluation, however, noted that Plaintiff could stand and walk for four to six hours in an eight hour work day and could sit for four to six hours in an eight hour work day. R 428. It also stated that Arroyo could lift up to 20 pounds frequently and 25 pounds occasionally. R 428. The surgeon also stated that Arroyo could use his hands for simple grasping for four to six hours, for pushing and pulling for two to four hours and for fine manipulation

for six to eight hours. He is able to reach frequently, bend, squat, and kneel occasionally, and climb never.

Taken as a whole, the surgeon's findings are not inconsistent with an RFC for a full range of sedentary work. Especially in the context of the other evidence, they do not undermine the ALJ's conclusions.

Moreover, it is significant that Dr. Giordano's physical capacity form is dated February 15, 2010, before the second operation. Dr. Giordano had a follow up appointment with Arroyo on August 13, 2010, after the second operation. At that appointment, Arroyo reported improvement, e.g., that his "lower extremity pain is now intermittent." R 387.

As is appropriate, the ALJ did credit the surgeon's medical opinion as a surgeon. The ultimate conclusion of disability or fitness for sedentary work, however, is entitled to less deference, as it is reserved for the Commissioner. *See* SSR 96-5(p). In the context of all the evidence, which the ALJ clearly did consider, the ALJ was not required to adopt the opinion of one surgeon that the maximum work day was six, not eight, hours.

### 3. Arroyo's complaints about his pain

Plaintiff contends that the ALJ improperly discredited his complaints of pain, because the complaints are supported by the medical evidence, including Dr. Fernando and Dr. Giordando's evaluations. The Commissioner's position is that the ALJ considered Arroyo's subjective complaints regarding his pain and provided a thorough discussion of why he did not find them entirely credible.

The ALJ's opinion cites to the testimony of Arroyo about his limitations. The ALJ noted that Arroyo testified that he could do nothing but lie down and watch television all day, could stand for only seven minutes, could sit for only ten minutes, and could walk for only 10 minutes. R 22. He testified that he could not drive, but later, upon further questioning, admitted to owning a car that he last drove approximately a week before the hearing before the ALJ. R 22. He claimed to take approximately six prescription pain pills a day, but could not adequately explain how he acquires the medication because he did not have a treating physician or insurance. He said that the hospital prescribed the pain medication and muscle relaxers. R 32. Arroyo stated he received the medication upon visits to the emergency room, but the ALJ noted that the record indicated that Arroyo visited the emergency room once every few

9

months, which would not be sufficient to acquire as much medication as he alleged to be taking.

After a review of Arroyo's complaints of pain, the ALJ concluded that the objective medical evidence indicated that Arroyo was not as limited as he claimed to be. R 22. He cited to a March 2010 MRI that showed that Arroyo's condition had not worsened or changed since the post-operative MRI taken in August 2005, after Arroyo's first surgery. He also noted that Arroyo's spinal surgeon found that he could sit, stand, and walk for four to six hours each day and could lift up to twenty pounds, concluding that he had "a residual functional capacity of between light and sedentary work." The ALJ noted that the consultative examiner's findings were similar and that both the surgeon and consultative examiner found that he "cannot do only physically demanding jobs." R 22 (citing Exhibits 11F and 13F). [2]

Accordingly, the ALJ found an inconsistency between the medical evidence and Arroyo's statements concerning the intensity, persistence, and

---

[2] Although he does not raise it as a claim of error, Arroyo cites the results of that March 3, 2010 MRI of the lumbar spine. The significance is not altogether clear, but I discuss it for the sake of completeness. The impression was: "Degenerative disc disease . . . with mild bilateral foraminal narrowing . . . . Overall when compared to the previous study [taken October 21, 2005], there has been no significant interval change." R 401; R 22. The second surgery took place several months later, in July 2010. (Recall that the claim of disability here has a starting date of July 2010.) The ALJ noted that Arroyo worked for "years after the first surgery, therefore it is not clear why he cannot continue working now."

There is no dispute that Arroyo had a second, more invasive surgery. The ALJ did not overlook this fact. See R 22. If the argument is that the ALJ should not have considered the March 2010 MRI, the argument fails because Arroyo fails to cite to any subsequent objective testing suggesting the worsening of his condition. In June 2010, his surgeon noted that Arroyo was "unemployed but capable of working." R 388 (10F). This was so even with the persistent pain Arroyo claimed to suffer following the August 2005 surgery.

According to postoperative notes for the second surgery, Arroyo "did well" postoperatively and had an "uncomplicated" postoperative course. R 314. A follow-up MRI on July 19, 2010, showed that Arroyo had "lumbar bodies of normal height and alignment with pedicle fixation screws and plates at the L4, L5, and S1 levels which appear to be standardly positioned" R 363. Notably, Dr. Fernando noted that the "reason for the fusion is unclear." R 421.

limiting effects of the symptoms alleged. The ALJ concluded that such complaints were not wholly credible to the extent they are inconsistent with the evaluations of Dr. Fernando and Dr. Giordano, to which he accorded "great weight." R 23 (citing Exhibits 8F, 9F, 10F, 11F, and 13F).

The ALJ did not err in his analysis of Arroyo's complaints regarding his pain. Subjective complaints must be supported by clinical evidence, including medical signs or laboratory findings that shows the existence of a severe impairment that could reasonably be expected to cause the symptoms alleged by the claimant. 20 CFR §§ 404.1529(b), 416.929(b); SSR 96-7p. Where a claimant alleges symptoms that appear to be greater in severity than what the medical evidence suggests, the Commissioner may consider other evidence, including the claimant's daily activities, treatment, and nature and extent of the symptoms alleged. 20 CFR 404.1529(c)(3), 416.929(c)(3), SSR 96-7p. The ALJ must give serious consideration to complaints of pain, even when such complaints are not fully supported by the objective medical record, but need not accept without questioning the credibility of these complaints. *LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citations omitted). Ultimately, the ALJ has discretion to evaluate the claimant's credibility in light of the totality of the objective evidence. *Id.*

Here, the ALJ acknowledged and followed the mandatory two-step process regarding a claimant's symptoms: (1) determining whether there was an underlying medically determinable impairment that could reasonably be expected to produce the claimant's pain or other symptoms and (2) evaluating the intensity, persistence, and limiting effects of these symptoms to determine the extent to which they limit Arroyo's ability to do basic work activities. R 22.

The ALJ concluded that the objective medical evidence indicated that Arroyo was not as limited as he claimed to be. R 22. He also stated a basis for his conclusion that Arroyo's subjective complaints were not wholly credible. *See LaCorte v. Bowen*, 678 F. Supp. 80, 83 (D.N.J. 1988) (citing *Cotter v. Harris*, 642 F.2d 700 (3d Cir. 1981) (If the ALJ concludes that testimony is not credible, the ALJ must indicate the basis for that conclusion in his decision.).

Such balancing of evidence is well within the ALJ's discretion and competence. Disagreement with the balance he struck is not a basis for remand.

11

## II. CONCLUSION

Arroyo's claims of error based on the evidence adduced and evaluated at the hearing before the ALJ fail to show that the ALJ erred as a matter of law or that his decision was not supported by substantial evidence. The denial of Arroyo's DIB and SSI applications is therefore **AFFIRMED**.

An Order will be entered in accordance with this Opinion.

/s/ Kevin McNulty
**Hon. Kevin McNulty**
**United States District Judge**

Dated: July 25, 2014